UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLARESA BAGLEY, | § | |
| Plaintiff, | § | |
| vs. | § | No. 3:16-CV-0420-N (BF) |
| PENNYMAC CORP., | § | |
| Defendant. | § | |

FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the District Court referred this removed civil action to the United States Magistrate Judge Paul D. Stickney for pretrial management. *See* New Case Notes [ECF No. 3]. Before the Court is Defendant PennyMac Corp.'s Motion to Dismiss [ECF No. 17]. For the following reasons, the District Court should **grant in part** and **deny in part** Defendant's Motion.

### Background

This case arises out of foreclosure proceedings initiated against Plaintiff's home in Mesquite, Texas (the "Property"). Notice of Removal 1 [ECF No. 1]. Claresa Bagley ("Plaintiff") originally filed this action against Defendant PennyMac Corp. ("PennyMac") on February 2, 2016, in the 192nd District Court of Dallas County, Texas. *Id.* [ECF No. 1]. On February 15, 2016, Defendant timely removed the case to federal court pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a) and federal question jurisdiction under 28 U.S.C. § 1331. *Id.* [ECF No. 1]. Plaintiff alleges she acquired the Property in 2005. Pl.'s Am. Compl. 2 [ECF No. 16]. Plaintiff executed a deed of trust with Mortgage Electronic Registration Systems, Inc. ("MERS") on December 15, 2008. Def.'s Mot. to Dismiss App. Ex. 3 [ECF No. 19-1]. MERS assigned the Deed of Trust to Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, L.P. FKA Countrywide Home Servicing, L.P. ("BANA") on October 3, 2011. *Id.* [ECF No 19-1].

1

BANA subsequently assigned the Deed of Trust to PennyMac on July 31, 2015. *Id.* at Ex. 5 [ECF No 19-1]. Plaintiff defaulted on her loan but entered loan modifications in December 2012 and October 2014. Pl.'s Am. Compl. 2 [ECF No. 16]; Def.'s Mot. to Dismiss App. Ex. 1 & 2 [ECF No 19-1].

Plaintiff's original petition alleged claims against Defendant for violations of 12 U.S.C. § 2605(b) of the Real Estate Settlement Procedures Act ("RESPA") and the Texas Property Code requesting an ex parte temporary restraining order and an ex parte temporary injunction. Pl.'s Original Pet. 3-4 [ECF No. 1-2]. With leave of court [ECF No. 14], Plaintiff filed her amended complaint reasserting her claims for violations of RESPA and the Texas Property Code, but added new claims for: violation of the Texas Deceptive Trade Practices Act ("DTPA"), the Texas Debt Collection Practices Act ("TDCPA"), gross negligence, fraud, violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), and declaratory judgment. Pl.'s Am. Compl. 2-9 [ECF No. 16].

Defendant moves to dismiss for failure to state a plausible claim for relief pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6). Def.'s Mot. to Dismiss 1 [ECF No. 17]. Plaintiff failed to file a written response to the motion. *See* Docket. The Court therefore considers the motion without the benefit of a response.

## Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

2

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). In deciding a Rule 12(b)(6) motion, the court construes the plaintiff's complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

## I. PennyMac's Rights and Splitting the Note

The gravamen of Plaintiff's claim is that Defendant did not receive a valid transfer of the Deed of Trust and thus had no right to foreclose on the Property. Pl.'s Am. Compl. 4 [ECF No. 16]. Plaintiff alleges MERS as a nominee did not have the right to assign the Note to PennyMac because it was not attached to the Deed of Trust and therefore PennyMac's foreclosure on the Property was unlawful. *Id.* [ECF No. 16].

A deed of trust gives the lender as well as the beneficiary the right to invoke the power of sale, even though such parties may not also own or hold the note. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013). Texas law provides that either a mortgagee or a mortgage servicer may administer a deed of trust foreclosure. *See Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011) (per curiam) (citing TEX. PROP. CODE ANN. §§ 51.002 & 51.0025). A "mortgagee" is "the grantee, beneficiary, owner, or holder of a security instrument," a "book entry system," or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."

3

Tex. Prop. Code Ann. § 51.0001(4). A mortgage servicer is "the last person to whom the mortgagor has been instructed by the current mortgagee to send payment for the debt secured by a security instrument." *Id*. § 51.0001(3). "Because MERS is a book-entry system, it qualifies as a mortgagee." *Martins*, 722 F.3d at 255.

The Court will first address MERS' authority under the Deed of Trust. Plaintiff contends that MERS was only acting as a nominee when it assigned the Note to Defendant. Pl.'s Am. Compl. 4 [ECF No. 16]. Plaintiff contends that MERS lacked the authority to assign the Note. *Id*. [ECF No. 16]. Plaintiff alleges MERS did not own the Note and therefore did not have the right to assign the Note to BANA. *Id*. [ECF No. 16]. The Deed of Trust names MERS as the beneficiary for the lender and grants MERS the power to sell, assign, and foreclose on the Property upon default. Def.'s. Mot. to Dismiss App. Ex. 3 [ECF No. 19-1]. The Fifth Circuit found that under Texas law, MERS has the authority to assign a deed of trust. *Martins*, 722 F.3d at 253 ("Texas recognizes assignment of mortgages through MERS and its equivalents as valid and enforceable"); *see also Wigginton v. Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *3 (N.D. Tex. July 7, 2011), aff'd, 488 Fed. App'x 868 (5th Cir. 2012) (explaining that if a deed of trust provides for the power of sale then a party to that deed of trust has such authority); *Richardson v. CitiMortgage, Inc.*, No. 6:10-CV-119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) (finding that MERS had the authority to transfer the rights and interests in the deed of trust because MERS was the nominee for the lender and its successors and assigns).

Thus, MERS had the authority to assign the Deed of Trust to BANA. BANA, thereby, had the authority to assign the Note and Deed of Trust to PennyMac who obtained all rights and interests in the Deed of Trust, including the right to foreclose on the Property.

Plaintiff also alleges that the separation and assignment of the Note without the Deed of Trust attached was unlawful. Pl.'s Am. Compl. 4 [ECF No. 16]. Defendant argues that the "split the note" theory has no support and the Note and Deed of Trust do not have to be transferred together. Def.'s Br. Supp. 10 [ECF No. 18].

When MERS transferred the Deed of Trust to BANA it transferred the Note as well. BANA's transfer to PennyMac also conveyed the Note and the Deed of Trust. Courts in the Fifth Circuit have consistently held that the deed of trust automatically transfers the debt, which is evidenced by the promissory note, thus rejecting the "split the note" theory. *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *3 (N.D. Tex. July 12, 2012) (explaining that the Deed of Trust has no legal effect without the Note so a transfer of the Deed of Trust automatically transfers the Note); *Valdez v. Fed. Home Loan Mort. Corp.*, No. 3:11-CV-1363-F, 2011 WL 7068386, at *2 (N.D. Tex. Nov. 28, 2011) ("When a note is transferred from one mortgage to another, the interest in the subject deed of trust goes along with it."); *Malikyar v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-417, 2011 WL 5837262, at *5 (E.D. Tex. Oct. 28, 2011) ("A transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions.") (citation omitted); *Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, 2012 WL 1836095, at *3 (N.D. Tex. May 21, 2012) (rejecting the split the note theory because there was no merit to plaintiffs' argument that the deed of trust and note were "split"). MERS did not unlawfully assign the Note and Deed of Trust by transferring them separately.

Plaintiff also alleges that the failure to name and/or mention MERS as the holder of the Note in her Loan Modification Agreements makes the foreclosure ineffective and wrongful. Pl.'s Am. Compl. 4 [ECF No. 16]. As stated above and as Defendant correctly addresses, the Deed of Trust

specifically allowed MERS to transfer the its interest. Therefore, when Plaintiff entered the Modification Agreements, BANA had already assigned the Deed of Trust to PennyMac. *See* Def.'s Mot. to Dismiss App. Ex. 5 [ECF No. 19-1]; Def.'s Br. Supp. 11 [ECF No. 18]. MERS was not required to be named in the Modification Agreements because it was no longer the holder of the Note or Deed of Trust. The District Court should dismiss Plantiff's splitting the note theory. PennyMac holds a valid assignment and interest in the Note and Deed of Trust.

## *II. Wrongful Foreclosure*

Plaintiff has failed to state a plausible claim for wrongful foreclosure. In Texas, the elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Biggers v. BAC Home Loans Serv., L.P.*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011) (citing cases). Plaintiff only alleges that Defendant violated Texas Property Code § 51.001 by failing to give her notice of the foreclosure sale. Pl.'s Am. Compl. 4-5 [ECF No. 16]. Plaintiff's claim of wrongful foreclosure due to a lack of notice fails because "[s]ervice of notice is complete when the notice is sent via certified mail. . . . There is no requirement that [plaintiff] receive the notice." *Martins*, 722 F.3d at 256 (citing TEX. PROP. CODE § 51.002(e)). Additionally, Plaintiff fails to allege any facts showing that her home was sold at a "grossly inadequate selling price." Nor does she allege any facts that explain how a defect in the foreclosure sale proceedings resulted in a grossly inadequate selling price. An inadequate selling price is a necessary element of a wrongful foreclosure claim. *Biggers*, 767 F. Supp. 2d at 729. Thus, Plaintiff's claim for wrongful foreclosure should be dismissed under Rule 12(b)(6). *Pollett v. Aurora Loan Servs.*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam) (affirming dismissal of wrongful foreclosure claim where the plaintiff "failed to allege . . . a grossly inadequate selling price and a causal connection between

a defect in the foreclosure sale proceedings and the grossly inadequate selling price."); *Hurd v. BAC Home Loans Serv., L.P.*, 880 F. Supp. 2d 747 (N.D. Tex. 2012) (dismissing wrongful foreclosure claim under Rule 12(b)(6) where plaintiff failed to allege that the property was sold for a grossly inadequate price or a causal connection between the alleged defects in the foreclosure sale and any grossly inadequate selling price).[1]

### III. Texas Deceptive Trade Practices Act

Under Texas law, the elements of a Deceptive Trade Practices Act ("DTPA") claim are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Marquez v. Fed. Nat'l Mortg. Ass'n*, No. 3:10-CV-02040-L, 2011 WL 3714623, at *5 (N.D. Tex. Aug. 23, 2011) (quoting *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)). Thus, a claimant asserting a cause of action under the DTPA must be a "consumer" in order to have standing. *See Woods v. Bank of Am., N.A.*, No. 3:11-CV-1116-B, 2012 WL 1344343, at *7 (N.D. Tex. Apr. 17, 2012) (quoting *Cushman v. GC Serv., L.P.*, 397 F. App'x 24, 27–29 (5th Cir. 2010)). A "consumer" under the DTPA is defined as one who "seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4). "Goods" include "tangible chattels or real property purchased or leased for use." *Id*. at § 17.45(1). "Services" are defined as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." *Id*. at § 17.45(2).

Texas Courts have consistently held that borrowing money does not constitute acquisition of a good or service. *Woods*, 2012 WL 1344343, at *7; *Marquez*, 2011 WL 3714623, at *5; *Myers v.*

---

[1] Plaintiff's claim for wrongful foreclosure also fails because PennyMac had the right to foreclose through MERS' lawful assignment of its interest. *See supra* Part I.

*Bank of Am., N.A.*, No. 4:11-CV-457, 2012 WL 1107687, at *2 (E.D. Tex. March 31, 2012) (citing

*La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984)). "Although

a loan is not in itself a good or service, a lender may be subject to a DTPA claim if the borrower's

objective is the purchase of a good or service." *Woods*, 2012 WL 1344343, at *7 (quoting

*Marquez*, 2011 WL 3714623, at *5).

Here, it appears that Plaintiff obtained a loan to purchase the Property. The servicing of the

loan by PennyMac was incidental to that objective. Plaintiff was not purchasing a good or service

with respect to the servicing of the loan. Thus, the Court finds that Plaintiff is not a "consumer"

for purposes of the DTPA. *See Woods*, 2012 WL 1344343, at *7 ("the servicing or administration

of the loan is merely incidental to a plaintiff's prior objective to purchase a residence, such events

do not bestow consumer status upon the plaintiff for purposes of the DTPA.").

Because Plaintiff cannot demonstrate that she is a "consumer" she lacks standing to assert a

claim under the DTPA. Furthermore, she cannot prove a necessary element for which she has the

burden of proof at trial for a DTPA claim. Plaintiff's claim under the DTPA should be dismissed

and Plaintiff's request for actual damages and mental anguish should be denied.[2]

### IV. Texas Debt Collection Practices Act

Plaintiff alleges that Defendant violated the Texas Finance Code in foreclosing on the Property

by violating §§ 392.304(a)(10), 392.303(a)(2), and 392.301(a)(8) of the Texas Finance Code. Pl.'s

Am. Compl. 5 [ECF No. 16]. Section 392.301(8) states that a debt collector may not threaten to

take an action prohibited by law. TEX. FIN. CODE ANN. § 392.301(8). Section 392.304 prohibits

a debt collector from using "fraudulent, deceptive, or misleading representations" in collecting a

---

[2] Plaintiff alleges she should be entitled to actual damages under the DTPA and has suffered severe mental anguish, emotional stress, emotional suffering, and loss of income. Pl.'s Am. Compl. 6 ¶¶ 7, 8 [ECF No. 16].

8

debt. *Id*. § 392.304(a). Section 392.304(a)(10) prohibits "using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval." *Id*. § 392.304(a)(10). Section 392.303 prohibits a debt collector from using unfair or unconscionable means to collect a debt. *Id*. § 392.303. Section 392.303(a)(2) prohibits the "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]" *Id*. § 392.303(a)(2). Plaintiff alleges the violations of these sections constitutes violations of the Texas Debt Collection Practices Act ("TDCPA"). Pl.'s Am. Compl. 5 [ECF No. 16].

Plaintiff fails to allege facts or provide evidence of what actions Defendants undertook in violating any of these provisions under the TDCPA. *Id*. at 5-6 [ECF No. 16]. Plaintiff does not allege a single act supporting violations of §§ 392.304(a)(10), 392.303(a)(2), and 392.301(a)(8). *See id*. [ECF No. 16]. Plaintiff only alleges that "the acts, omissions and conduct by the Defendants constitute violations of the Texas Debt Collection Practices Act." *Id*. at 5 [ECF No. 16]. It has been established that Defendant had the right to collect on the Note. *See supra* Part I. Accordingly, Plaintiff's claims under §§ 392.304(a)(10), 392.303(a)(2), and 392.301(a)(8) of the Texas Finance Code alleging violations of the TDCPA should be dismissed for failure to state a claim. *Gipson v. Deutsche Bank Nat'l Trust Co.*, No. 3:13-CV-4820-L, 2015 WL 2069583, at *7 (N.D. Tex. May 4, 2015); *see also Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012) (dismissing TDCPA claim where the plaintiffs neither pointed to specific provisions that the defendant allegedly violated, nor supplied sufficient facts to

state a plausible claim for relief—other than their invalid theory that the defendant could not

foreclose because it was not the holder of the note).  The district court should dismiss Plaintiff's

claims under the TDCPA and deny her request for attorney's fees and damages.

### V. RESPA

Plaintiff alleges that RESPA required PennyMac to send her a Notice of Transfer and

Servicing Disclosure. Pl.'s Am. Compl. 3 [ECF No. 16].  Plaintiff alleges that the failure to give

her notice of the transfer to PennyMac caused her to continue to make payments to Bank of

America, the original lienholder, as opposed to PennyMac. *Id*. [ECF No. 16]. Plaintiff alleges she

never received information required under RESPA that PennyMac became the holder of the note.

*Id*. [ECF No. 16].  As a *pro se* plaintiff and in the abundance of caution, the Court construes

Plaintiff's complaint to allege a violation of 12 U.S.C. §§ 2605(b) or 2605(c).[3]  Specifically §

2605(c)(1) states, "[e]ach transferee servicer to whom the servicing of any federally related

mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment,

sale, or transfer.") 12 U.S.C. § 2605(c)(1).[4]  In order to recover for a violation, a borrower must

show "actual damages to the borrower as a result of the [servicer's] failure" to comply with

RESPA. *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 795 (5th Cir. 2014) (per curiam)

(citing 12 U.S.C. § 2605(f)(1)).

In *Law*, the Fifth Circuit noted, "Law does not, however, allege facts demonstrating that

these damages were the result of Ocwen's failure to provide him with the required notice. He does

---

[3] Plaintiff's original petition in state court alleged a violation of § 2605(b). Pl.'s Original Pet. 3 [ECF No. 1-2].
[4] Plaintiff's complaint alleges "[a]ccording to RESPA and 24 []CFR [§] 3500.21 ['])each transferor servicer and transferee servicer of any mortgage servicing loan shall deliver to the borrower a written Notice of Transfer, containing the information described in paragraph (d) (3) of this section, of [any] assignment, sale, or transfer of[] the servicing of the loan.[']" Pl.'s Am. Compl. 2-3 [ECF No. 16].

not allege, for example, that as a result of Ocwen's failure to provide notice, he mistakenly continued sending his payments to AAMES Funding Corporation rather than sending them to Ocwen, resulting in foreclosure by Ocwen." *Law*, 587 F. App'x at 795. Unlike in *Law*, this is specifically what Bagley has pled in her complaint as her reason for not paying PennyMac. Pl.'s Am. Compl. 3 [ECF No. 16]. Plaintiff states in her complaint,

> . . . She only knew Bank of America as the original holder and servicer of the Note. Th[i]s is the reason why Plaintiff asserted that she had no idea that PennyMac was the holder of the note, until she started to receive foreclosure notices in the mail[.] Thus, because Plaintiff was not given any other information or written notice as specifically stated in the note or any other owner of the note other than Bank of America. Plaintiff sought . . . a [t]emporary [i]njunction by the District Court.

*Id.* 3 [ECF No. 16]. Defendants argue that the statute of limitations for a violation of § 2605(a) is three years and Plaintiff's claim is now barred. Def.'s Br. Supp. 7 [ECF No. 18].

As stated previously, it appears from Plaintiff's complaint that she alleges a violation of § 2605(c), not § 2605(a).[5] Under § 2605(c)(1), "[e]xcept as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days *after the effective date of transfer* of the servicing of the mortgage loan (with respect to which such notice is made)." 12 U.S.C. § 2605(c)(1) (emphasis added). Although Defendant correctly argues under 12 U.S.C. § 2614[6] there is a statute of limitations of three years for violations of § 2605, the

---

[5] "(a) Disclosure to applicant relating to assignment, sale, or transfer of loan servicing[:] Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." 12 U.S.C. § 2605(a).

[6] "Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Bureau, the Secretary, the Attorney General of any State, or the insurance

assignment of the Deed of Trust to PennyMac occurred on July 31, 2015. Def.'s Mot. to Dismiss App. Ex. 5, 39-40 [ECF No. 19-1]. Under § 2614, Plaintiff's claims accrued when the alleged violations occurred. *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 630 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 754 (2014) (citing *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003) ("As the magistrate judge pointed out, the one claim that is within the three-year statute of limitations period is Bank of America, N.A.'s alleged failure to notify the Haases that it was the new loan servicer in July 2011.")). The December 15, 2008, date cited by Defendant is the date of the Deed of Trust, not the date of the assignment of the Deed of Trust to PennyMac. *See* Def.'s App. Ex. 5 [ECF No. 19-1] ("Assignment to PennyMac Loan Servicing, L.L.C."); Def.'s App. Ex. 6 [ECF No. 19-1] ("Corrective Assignment to PennyMac Loan Services, L.L.C."). The limitations period therefore began on July, 31, 2015, the day BANA assigned the Deed of Trust to PennyMac. Plaintiff filed this suit within this three year period. Pl.'s Orig. Pet. [ECF No. 1-2]. Contrary to Defendant's assertions, Defendant has not produced evidence of any notice sent under §§ 2605(b) or 2605(c) as required by RESPA. In accepting Plaintiff's pleadings as true, well-pleaded fact allegations, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff's claim is sufficient to withstand a motion to dismiss.[7]

## *VI. Quiet Title*

To prevail on a quiet title claim, a Texas plaintiff must show that: (1) she has an interest in a specific property; (2) her title to the property is affected by a claim by Defendant; and (3) Defendant's claim to the property, although facially valid, is invalid or unenforceable. *See, e.g.*

---

commissioner of any State may be brought within 3 years *from the date of the occurrence* of the violation." 12 U.S.C. § 2614 (emphasis added).

[7] Under this Court's recommendation, this is the only claim that survives Defendant's 12(b)(6) motion.

*Vernon v. Perrien*, 380 S.W.3d 47, 61 (Tex. App.-El Paso 2012, pet. denied). Plaintiff "must prove and recover on the strength of [her] own title, not the weakness of [her] adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.–Corpus Christi 2001, no pet.). As a precaution, the Court notes that Plaintiff in her request for declaratory judgment alleges she had "superior rights to title of the property" at the time of foreclosure. Pl.'s Am. Compl. 7 ¶ 14 [ECF No. 16]. She does not allege that she was current on her loan payments after modifications in 2012 and 2014. The Court does not construe Plaintiff's complaint to include a quiet title claim. Plaintiff's contention that Defendant's claim to the Property is invalid because of the separation and assignment of the Note without the Deed of Trust attached is without merit. *See Martins*, 2013 WL 3213633, at *255. The split-the-note theory has already been rejected by the Court. Thus, Plaintiff has failed to state a claim for quiet title upon which relief can be granted. *See Cruz*, 2012 WL 1836095, at *4 (dismissing quiet title claim where plaintiff failed to allege facts that, if proven, would establish superior title).

### *VII. Plaintiff's Other Claims*

To the extent Plaintiff has attempted to state a claim on any other substantive grounds, including: gross negligence, fraud, racketeering, and violations of RICO, *see* Pl.'s Am. Compl. 8 ¶ 10, 9-10 ¶¶ 17-23 [ECF No. 16], her vague assertions offer nothing more than labels, conclusions, and formulaic recitations of the elements of various causes of action. Plaintiff does not state enough facts to permit the reasonable inference that PennyMac is liable for any misconduct associated with her mortgage or foreclosure in respect to these other claims. Further, Plaintiff has not named MERS as a defendant in this case. "It is well settled that, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.'"

*Bolden v. Greenpoint Mortg. Funding, Inc.*, No. 3:04-CV-0379-P, 2004 WL 2297086, at *4 (N.D.

Tex. Oct. 13, 2004) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)).[8]

Plaintiff also alleges Defendant violated: the Dodd-Frank Wall Street Reform and

Consumer Protection Act under 12 C.F.R. parts 1024 and 1026; the High-Cost Mortgage and

Homeownership Counseling Amendments to the Truth in Lending Act ("TILA"), Regulation Z[9];

and the Home Ownership Counseling Amendments to the Real Estate Settlement Procedures Act,

Regulation X[10], "by denying Plaintiff the short sale of the property although on January 29, 2016,

Defendant clearly stated they had all of the necessary documents to complete the short sale of the

property." Pl.'s Am. Compl. 5-6 [ECF No. 16]. None of these violations are viable causes of

action under the DTPA or the TDCPA as Plaintiff alleges. *Id*. [ECF No. 16]. Plaintiff does not

assert any additional facts in support of these claims or that they grant her a private right of action.

Plaintiff does not allege facts that she did not receive counseling in accordance with Regulation X

or Regulation Z. Plaintiff's complaint lacks any allegations to show there has been a violation of

any applicable provision of TILA. Further, Plaintiff's claims under the Dodd-Frank Wall Street

---

[8] The District Court should also deny Plaintiff's requests for an "order for the accounting from the Defendant of all transactions of the loan" and "a Qualified Written Request." Pl.'s Amen. Compl. 7 ¶¶ 11-12.

[9] "Section 1433 of the Dodd-Frank Act amended TILA to require applicants of federally-related high-cost mortgages to obtain counseling before securing such a loan. . . . The creditor must certify compliance with this requirement before extending the loan. The corresponding rule in Regulation Z became effective on January 10, 2014, and provides almost identical language as the amended TILA provision." *Price v. U.S. Bank Nat'l Ass'n*, No. 3:13-CV-175-O, 2014 WL 803722, at *11 (citations omitted); *see* 12 C.F.R. § 1026.34(5)(i) (2014).

[10] "In § 1450 of the Dodd-Frank Act, Congress amended § 5(c) of RESPA to require lenders to provide applicants of 'federally related mortgage loans' with a 'reasonably complete or updated list of homeownership counselors' in the applicant's area that are certified by HUD. The relevant rule in Regulation X also became effective on January 10, 2014, and provides nearly identical language but adds that the lender provide this list to the borrower 'not later than three business days after a lender, mortgage broker, or dealer receives an application.'" *Price*, 2014 WL 803722, at *11 (N.D. Tex. Feb. 28, 2014) (citations omitted).

Reform and Consumer Protection Act fail. The Court agrees with Defendant that Plaintiff's mere reference to 12 C.F.R. parts 1024 and 1026 is insufficient to give fair notice of a claim. Plaintiff's claims under these two provisions are insufficient under Rule 8(a)(2) and *Twombly*. *Twombly*, 550 U.S. at 545 ("Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]") (internal quotation marks and citation omitted); *see* FED. R. CIV. P. 8(a)(2). These sections are expansive and even liberally construing Plaintiff's complaint the Court cannot determine what relation a short sale has to these regulations. Plaintiff does not provide any facts of Defendant's actions or liability under 12 C.F.R. parts 1024 or 1026. Plaintiff has failed to state a claim under Rule 12(b)(6) and the District Court should dismiss these claims.

### VIII. Declaratory and Injunctive Relief

Since Plaintiff's sole remaining RESPA claim under 12 U.S.C.A. § 2605[11] survives dismissal, Plaintiff's request for the entry of declaratory and injunctive relief at this stage is premature. Defendant's requests for dismissal of this relief should be denied without prejudice.

### RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that the District Court should **grant in part** and **deny in part** Defendant's 12(b)(6) Motion to Dismiss [ECF No. 17]. The District Court should deny dismissal of Plaintiff's claims under 12 U.S.C. § 2605 and 12 U.S.C. § 2614.[12] The District Court should dismiss with prejudice Plaintiff's remaining claims for: wrongful foreclosure; quiet title; violations of the Deceptive Trade Practices Act; violations of the

---

[11] *See supra* Part V.
[12] *Id.*

Texas Debt Collection Practices Act; violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act under 12 C.F.R. parts 1024 and 1026; violations of the High-Cost Mortgage and Homeownership Counseling Amendments to the Truth in Lending Act (Regulation Z); and the Home Ownership Counseling Amendments to the Real Estate Settlement Procedures Act (Regulation X).

      **SO RECOMMENDED**, this _____19_____ day of October, 2016.

                          PAUL D. STICKNEY
                          UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).